UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)
www.flsb.uscourts.gov

In re                                                    CASE NO. 09-21481-BKC-AJC
                                                         CHAPTER 7
FONTAINEBLEAU LAS VEGAS                                  (Jointly Administered)
HOLDINGS, LLC, et al.,

     Debtors.
_____ /

SONEET KAPILA, not individually but                     ADV. NO.
as Chapter 7 trustee of the above-styled
jointly administered Debtors,

     Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE CO.
OF PITTSBURGH, PA, XL SPECIALTY INSURANCE
COMPANY, NAVIGATORS INSURANCE COMPANY,
CATLIN SPECIALTY INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY,
ILLINOIS NATIONAL INSURANCE COMPANY,
WESTCHESTER FIRE INSURANCE COMPANY,
BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND, LTD., BATTALION CLO
2007-I LTD., CANPARTNERS INVESTMENTS
IV, LLC, CASPIAN CAPITAL PARTNERS, LP,
CASPIAN SELECT CREDIT MASTER FUND,
LTD., MARINER LDC, CASPIAN ALPHA
LONG CREDIT FUND, L.P., CASPIAN
SOLITUDE MASTER FUND, L.P., ING
PRIME RATE TRUST, ING SENIOR INCOME
FUND, ING INTERNATIONAL (II)- SENIOR
BANK LOANS EURO, ING INVESTMENT
MANAGEMENT CLO I, LTD., ING
INVESTMENT MANAGEMENT CLO II, LTD.,
ING INVESTMENT MANAGEMENT CLO III,
LTD., ING INVESTMENT MANAGEMENT
CLO IV, LTD., ING INVESTMENT

MANAGEMENT CLO V, LTD., PHOENIX CLO I, LTD., PHOENIX CLO II, LTD., PHOENIX CLO III, LTD., VENTURE II CDO 2002, LIMITED, VENTURE III CDO LIMITED, VENTURE IV CDO LIMITED, VENTURE V CDO LIMITED, VENTURE VI CDO, LIMITED, VENTURE VII CDO LIMITED, VENTURE VIII CDO, LIMITED, VENTURE IX CDO, LIMITED, VISTA LEVERAGED INCOME FUND, VEER CASH FLOW CLO, LIMITED, MONARCH MASTER FUNDING LTD., SPCP GROUP LLC, SOLA LTD., SOLUS CORE OPPORTUNITIES MASTER FUND LTD, VENOR CAPITAL MASTER FUND, LTD., SAN GABRIEL CLO I LTD, SHASTA CLO I LTD, SIERRA CLO II LTD, WHITNEY CLO I LTD., WHITNEY CLO I LTD., OLYMPIC CLO I LTD., GENESIS CLO 2007 – 1 LTD., JEFFREY SOFFER, ALBERT "SONNY" KOTITE, RAY PARELLO,  BRUCE WEINER,  GLENN SCHAEFFER,  JAMES FREEMAN,  DEVENDRA "DEVEN" KUMAR,  FONTAINEBLEAU RESORTS, LLC, CAMILIA M. DENNY, VICTOR A. DUVA, and HOWARD C. KARAWAN,

       Defendants.

_____/

## ADVERSARY COMPLAINT OBJECTING TO JEFFREY SOFFER'S STAY RELIEF MOTION [MAIN CASE ECF NO. 4779]

## AND

## COUNTERCLAIM FOR INJUNCTIVE AND OTHER RELIEF

The Plaintiff, SONEET KAPILA ("Kapila" or the "Trustee"), not individually, but as Chapter 7 Trustee of the above-styled jointly administered Debtors, files this Adversary Complaint Objecting to Jeffrey Soffer's Stay Relief Motion and Counterclaim for Injunctive and Other Relief, NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, XL SPECIALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, CATLIN SPECIALTY INSURANCE COMPANY, FEDERAL INSURANCE COMPANY,

2

GREAT AMERICAN INSURANCE COMPANY, ILLINOIS NATIONAL INSURANCE COMPANY, WESTCHESTER FIRE INSURANCE COMPANY collectively, the "Insurer Defendants"), BRIGADE LEVERAGED CAPITAL STRUCTURES FUND, LTD., BATTALION CLO 2007-I LTD., CANPARTNERS INVESTMENTS IV, LLC, CASPIAN CAPITAL PARTNERS, LP, CASPIAN SELECT CREDIT MASTER FUND, LTD., MARINER LDC, CASPIAN ALPHA LONG CREDIT FUND, L.P., CASPIAN SOLITUDE MASTER FUND, L.P., ING PRIME RATE TRUST, ING SENIOR INCOME FUND, ING INTERNATIONAL (II)- SENIOR BANK LOANS EURO, ING INVESTMENT MANAGEMENT CLO I, LTD., ING INVESTMENT MANAGEMENT CLO II, LTD., ING INVESTMENT MANAGEMENT CLO III, LTD., ING INVESTMENT MANAGEMENT CLO IV, LTD., ING INVESTMENT MANAGEMENT CLO V, LTD., PHOENIX CLO I, LTD., PHOENIX CLO II, LTD., PHOENIX CLO III, LTD., VENTURE II CDO 2002, LIMITED, VENTURE III CDO LIMITED, VENTURE IV CDO LIMITED, VENTURE V CDO LIMITED, VENTURE VI CDO, LIMITED, VENTURE VII CDO LIMITED, VENTURE VIII CDO, LIMITED, VENTURE IX CDO, LIMITED, VISTA LEVERAGED INCOME FUND, VEER CASH FLOW CLO, LIMITED, MONARCH MASTER FUNDING LTD., SPCP GROUP LLC, SOLA LTD., SOLUS CORE OPPORTUNITIES MASTER FUND LTD, WHITNEY CLO I LTD., WHITNEY CLO I LTD., OLYMPIC  CLO I LTD., GENESIS CLO 2007 – 1 LTD.,VENOR CAPITAL MASTER FUND, LTD., SAN GABRIEL CLO I LTD, SHASTA CLO I LTD, SIERRA CLO II LTD, WHITNEY CLO I LTD. (collectively, the Term Lender Defendants'), JEFFREY SOFFER,  ALBERT "SONNY" KOTITE,  RAY PARELLO,  BRUCE WEINER,  GLENN SCHAEFFER,  JAMES FREEMAN,  DEVENDRA "DEVEN" KUMAR, FONTAINEBLEAU RESORTS, LLC, CAMILIA M. DENNY, VICTOR A. DUVA, and HOWARD C. KARAWAN (sometimes collectively referred to as the "Former D&Os" or the

3

"D&O Defendants") (the Insurer Defendants, the Term Lender Defendants, and the D&O Defendants shall sometimes collectively be referred to herein as the "Defendants"), and says:

### INTRODUCTION & PRELIMINARY STATEMENT

1.     In this Adversary Complaint Objecting to Jeffrey Soffer's Stay Relief Motion and Counterclaim for Injunctive and Other Relief (the "Complaint"), the Trustee seeks precisely the same relief granted by United States District Courts and/or Bankruptcy Courts in complex bankruptcy cases involving significant third party litigation claims, such as *In re Madoff*, *In re Drier*, *In re Lancelot Investors Fund, LP*, and the *In re The 1031 Tax Group, LLC*.

2.     In a motion for stay relief filed on December 30, 2014 [Main Case ECF No. 4779] by Jeffrey Soffer, a former officer, director, owner, and/or control person of the Debtors, on behalf of himself and other Former D&Os, the Trustee came to learn that the Term Lender Defendants have entered into a purported settlement with Soffer and other former principals of the Debtors (collectively, the Former D&Os") that requires certain or all of the Insurance Defendants to pay $93,000,000, leaving approximately $25,000,0000 remaining to pay the pending litigation claims of the Trustee and other claimants.

3.     In this Complaint, the Trustee need not prove that the proposed settlement by and among the Term Lender Defendants, the Insurer Defendants and the D&O Defendants is subject to the automatic stay imposed by Section 362 of the Bankruptcy Code, nor does the Trustee need to establish that the proceeds to be paid by the insurance carriers under the proposed settlement ($93 million), contrasted with the insurance policies themselves which are demonstrably property of the bankruptcy estates, are property of the estates.

4.     The Trustee merely needs to demonstrate that the efforts of the Term Lender Defendants – major creditors of the bankruptcy estates seeking to recover exactly the same damages they seek in proofs of claims filed in the bankruptcy estates – the Insurer Defendants

4

and the D&O Defendants, and to "evade review" of the Trustee's related appeal from a denial of

a bar order in connection with the payment of $80 million of exactly the same proceeds from the

exactly the same polices, causes direct and immediate harm to the bankruptcy estates and

constitutes an impairment of the Trustee's current and ongoing efforts to settle the same claims

against the same D&O Defendants involving the same insurance carriers, the Insurer Defendants.[1]

In successfully arguing against the bar order in connection with the $83.3 million settlement, the

Term Lenders' counsel  suggested that "we think this case is going to be destined for a much

more robust settlement we think *better for the Trustee and for us*  if we can just get closer to our

---

[1] The proposed settlement, seeking the Bankruptcy Court's blessing on a "self-imposed" emergency basis, is intended to accomplish what the Eleventh Circuit and other courts have expressly prohibited:  "[A] Chapter 7 Trustee's statutory duty to recover assets for the benefit of an estate may outweigh the harm suffered by an individual creditor who is required to pursue his claims through the bankruptcy process." *In re EZ Pay Services,* 389 B.R. 751, 760 (Bankr. M.D. Fla. 2007), *citing Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (because the claims asserted by the Trustee, as here, "are so closely related that allowing creditors to convert the bankruptcy into a race to the courthouse would derail the bankruptcy proceedings"). *See also, In re Superior Homes Inv.*, 521 Fed. Appx. 895, 898 (11th Cir. 2012), *citing, Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 967, n. 19 (11th Cir. 2012) (holding that bankruptcy courts have the power to enjoin state court litigation arising between non-debtors arising under the same facts alleged by the trustee that has an impact on the estate and, under *Alderwoods*, "a bankruptcy court may issue 'any type of order, whether injunctive, compensatory or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code");  *National American Insurance Co. v.  Ruppert Landscaping Co.*, 187 F.3d 439, 441-442 (4th Cir. 1999) (because the trustee's claims and the third party claims "all share the same underlying focus", it is "clear that the trustee should have first crack at challenging the [debtor's and]  transactions – the trustee's role is to bring such suits as these on behalf of  all creditors" and enjoining creditors from pursuing claims "maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process . . . in a multi-jurisdictional rush to judgment whose organizing principle could only be first-come, first-served"); *In re IFC Credit Corp.*, 422 B.R. 659 (Bankr. N.D. Ill. 2010) (without finding that policy proceeds were property of the estate, preliminary injunction under Section 105 was appropriate where trustee's claims that  director and officer breaches harmed all creditors, debtor was vicariously liable for such conduct and insurance proceeds were insufficient to satisfy trustee's claims brought on behalf of all creditors); *In re Adelphia Communications Corp.*, 298 B.R. 49 (S.D.N.Y. 2003) (Section 362 injunction preventing debtor's officers to be indemnified from policy proceeds and assuming such proceeds were property of the estate vacated, but case remanded to bankruptcy court to determine whether, under Section 105, "requisite economic harm to the debtor's estate" can be shown beyond speculation that  not granting a Section 105 injunction would be "adverse" to the estate).

trial date in Nevada." [10/15/14 Hr'g Tr. at pp 376-77] (hearing on Trustee's Settlement Motion). However, counsel's transparent remarks are belied by the Term Lenders' actions in seeking to engorge themselves on the bulk of the remaining proceeds and jam through a settlement approval, while the Trustee continues even at this moment to negotiate a settlement with the same Defendants and the same insurance carriers and the same proceeds, all to the detriment of the bankruptcy estate and the interests of other creditors. These actions, by major creditors of the estate, create direct and immediate harm to the estate, reflect an attempt to "hijack the bankruptcy", damage the "integrity of the bankruptcy process" and "derail the bankruptcy proceedings" and the efforts of a Trustee who is trying to serve the interest of all creditors, *including* the Term Lenders.

## JURISDICTION AND VENUE

5. This Court has jurisdiction as this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (G), and (O).

6. The Trustee does not consent to the entry of final orders and judgment by the Bankruptcy Court. To this end, the Trustee will shortly be filing a motion for an immediate and complete withdrawal of the reference to the District Court with jurisdiction of the Trustee's bar order appeal pending in District Court Case No. 1:14-mc-24520-KMW, Southern District of Florida (the "Appeal Action").

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This adversary proceeding has been brought in accordance with sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rules 7001(7) and (9) and 7065.

## THE PARTIES

A. **The Plaintiff**

9.     On June 9, 2009, Fontainebleau Las Vegas, LLC and certain affiliated entities (the "Resort Debtors") filed voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

10.     On November 25, 2009, certain affiliates of the Resort Debtors (the "Retail Debtors," and together with the Resort Debtors, the "Debtors") filed voluntary petitions pursuant to Chapter 11 with the Bankruptcy Court.

11.     On April 12, 2010, the Debtors' bankruptcy cases were converted to Chapter 7, and Soneet R. Kapila was appointed as the Chapter 7 Trustee for the Debtors.

**B.     The Defendants**

12.     The Defendants consist of: (i) the Insurer Defendants, which are comprised of insurance companies that issued director and officer ("D&O") liability insurance policies to or on behalf of the Debtors and/or their affiliates; (ii) the Term Lender Defendants, which are comprised of certain creditors of the Debtors; and (iii) the D&O Defendants, each of whom are former officers, directors, and or control persons of the Debtors.

13.     The Resort Debtors were borrowers or guarantors under a $1.85 billion Credit Facility intended to be used for development and construction of the Fontainebleau Resort and Casino in Las Vegas, Nevada.   The Term Lenders (or their predecessors) were lenders under the Credit Facility, who advanced more than $700 million to the Resort Debtors in reliance upon alleged false and misleading representations by various non-debtors, including certain former officers and directors of the Debtors (the "Nevada Defendants") regarding, *inter alia,* the cost to complete the Project.

**The Nevada Action**

14.     In March 2011, the Term Lenders filed a state court action in Nevada (the "Nevada Action") against certain of former directors, officers, and/or control persons of the

7

Debtors, alleging purported damages sounding in tort.  The trial in the Nevada Action is now scheduled to commence in August 2015.

**The Trustee Actions**

15.     On June 8, 2011, the Trustee filed an adversary proceeding in the Bankruptcy Court styled *Kapila v. Soffer et al.*, Adv. No. 11-02102-BKC-AJC-A, asserting claims against some, but not all, of the Nevada Defendants and others.  During 2012, the Trustee filed a separate adversary proceeding against certain former "independent managers" of the Debtors under Adversary Case 12-01274-BKC-AJC-A.   The two Trustee adversary proceedings shall collectively be referred to herein as the "Trustee Actions":

16.     The Trustee Action alleges, *inter alia*, that the defendants therein breached their fiduciary duties by causing the Debtors to incur additional obligations for their own benefit, at times when they knew or should have known the Debtors were insolvent, which these allegations arise from the same common nucleus of operative facts and circumstances as those in the Nevada Action.

**The Trustee Settlement**

17.     On June 26, 2014, the Trustee entered into a settlement with the Former D&Os and the Insurer Defendants requiring the payment of $83,300,000 to settle the Trustee Actions and obtain a release of certain disputed proofs of claim asserted in the bankruptcy case by certain of the Former D&Os (the "Trustee Settlement"), and on the same date, the Trustee filed a motion to approve the Settlement (the "Settlement Motion"). [Main Case. ECF No. 4470].

18.     The Trustee Settlement, among other things, required the entry of the Bar Order permanently enjoining the continued prosecution of the Nevada Action by the Term Lenders (and others) against the Former D&Os.  The Term Lenders and other third parties objected to the Trustee Settlement.

8

19.     The Bankruptcy Court conducted an evidentiary hearing on the Settlement Motion on October 14 and 15, 2014.  At the conclusion of the hearing, the Bankruptcy Court denied the Settlement Motion, finding "that under the circumstances before me on this proposed settlement, that the settlement is not fair and equitable, that the Trustee has failed to prove unusual circumstances to justify the bar order."  On October 24, 2014, the Bankruptcy Court entered its written Order denying the Trustee's Settlement Motion [Main Case ECF No. 4470], which the Trustee appealed to the District Court in the Appeal Action, which appeal remains pending.

### The Term Lender Settlement

20.     On December 30, 2014, Jeffrey Soffer filed his Emergency Motion To Lift The Automatic Stay, To The Extent Applicable, To Allow Payment Of Costs And Proceeds Under Certain Director And Officer Liability Insurance Policies (the "Stay Relief Motion") [Main Case ECF No. 4779].

21.     The Stay Relief Motion seeks authorization and permission from the Bankruptcy Court to allow and enable the director and officer (the "D&O") insurance carriers to pay, upon information and belief, an amount equal to $93,000,000 to the Term Lenders (as defined in the Stay Relief Motion, and who are creditors of the Debtors' estates) pursuant to a purported settlement agreement (which, notably, is not attached as an exhibit to the Stay Relief Motion and the terms of which are not otherwise described in the Stay Relief Motion) (the "Term Lender Settlement").

22.     Not only does the Stay Relief Motion fail on the merits because it essentially seeks the Bankruptcy Court's approval of a purported settlement of litigation between two groups of non-debtors pending before another court,  but the Bankruptcy Court does not have jurisdiction to hear the Stay Relief Motion because the very same issues that are sought to be "resolved" through the Bankruptcy Court's approval of the Stay Relief Motion are inextricably intertwined

with the issues on appeal pending before this Court of a recent order of the Bankruptcy Court denying an $83.3 million settlement advanced by the Trustee.

23.    The Stay Relief Motion, if granted, will result in the Bankruptcy Court's blessing and approval of the payment of $93,000,000 of D&O insurance policy proceeds to be paid directly to the Term Lenders to the detriment of the bankruptcy estates and their creditors.  The Trustee estimates, and the parties will not dispute, that if this requested payment is approved, no more than $25,000,000 of the face amount in D&O insurance policy proceeds will be available to satisfy the litigations claims of the Trustee.

24.    Meanwhile, the Trustee Settlement that is the subject of the pending appeal of the Bar Order before the District Court in the Appeal Action would have authorized the Debtors' estates to be paid $80,000,000 of D&O insurance proceeds for the sole and exclusive benefit of the estates and ALL of their creditors, and not just the Term Lenders to the exclusion of everyone else.

## OBJECTION TO STAY RELIEF MOTION

25.    The Trustee re-alleges paragraphs 1 through 24 above

26.    On December 30, 2014, Soffer filed the Stay Relief Motion.

27.    The Trustee objects to the Stay Relief Motion, and requests that such motion be denied in its entirety, based upon the facts and legal arguments that include, but may not necessarily be limited to, those set forth in Counts I and II below, which claims and allegations are incorporated herein by reference.

28.    The Debtors' estates have a sufficient ownership interest in the D&O insurance policies issued in the names of the Debtors (and/or their affiliates), and/or certain of the proceeds thereof.  Moreover, even if property of the Debtors' estates was not involved, the Term Lender

Action and/or the Term Lender Settlement are sufficiently "related to" or "likely to affect" the Trustee's own work on behalf of the Debtors' estates, and may thereby affect the amount of property in such estates or the allocation of property among creditors, that granting stay relief will cause direct damage and harm to the estates and *all creditors*.

## COUNTERCLAIM

The Trustee files this this Counterclaim against the Defendants, and alleges:

### COUNT I
### CLAIM FOR DECLARATORY RELIEF

The Trustee sues the Defendants and alleges:

29.     The Trustee re-alleges paragraphs 1 through 28 above.

30.     This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201, et seq.

31.     The Trustee seeks a declaration that: (i) the Debtors' estates have a bona fide and protectable ownership interest in the D&O insurance policies issued in the names of the Debtors (and/or their affiliates), and/or certain of the proceeds thereof; and/or (ii) even if property of the Debtors' estates was not involved, the Term Lender Action and/or the Term Lender Settlement are sufficiently "related to" or "likely to affect" the Trustee's own work on behalf of the Debtors' estates, and may thereby affect the amount of property in such estates or the allocation of property among creditors, that granting stay relief will cause direct damage and harm to the estates and all creditors.

32.     Based upon the foregoing, the Trustee is entitled to a declaration of his right to preserve the *status quo* while he continues to prosecute the Trustee Actions to final resolution.

33.     The Court has authority pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code to issue declaratory relief because this controversy is actual and justiciable, and the Court

11

has jurisdiction over matters affecting the Debtors' property and the effective and/or equitable administration of the Debtors' estates.

WHEREFORE, the Trustee respectfully requests the entry of judgment against the Defendants declaring that he has a sufficient property interest in the D&O policies that are the subject to the Term Lender Settlement requiring a declaration of his right to preserve the status quo while continues to prosecute the Trustee Actions to final resolution.; and (ii) for such other relief the Court may deem appropriate.

**COUNT II**
**CLAIM FOR INJUNCTIVE RELIEF**

The Trustee sues the Defendants and alleges:

34.     The Trustee re-alleges paragraphs 1 through 31 above.

35.     This is an action requesting the entry of injunction against the Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure, as incorporated into Rule 7065 of the Federal Rules of Bankruptcy Procedure.

36.     The Trustee has a significant property interest in the D&O policies that are the subject to the Term Lender Settlement requiring injunctive relief.

37.     Specifically, the Trustee seeks an Order that any further prosecution of Nevada Acton and consummation of the Term Lender Settlement *by the Defendants* be enjoined pursuant to section 105(a) of the Bankruptcy Code, pending the completion of the Trustee Actions.

38.     The Trustee requests that this Court grant the relief requested because: (i) the continuation of the Nevada Acton by the Term Lender Defendants and consummation and performance of the Term Lender Settlement by the Defendants will serve to improperly infringe upon the jurisdiction of this Court; and (ii) will cause the Term Lenders receive more than their proportionate share of property of the estates to the detriment of other similarly situated creditors.

39.     There is no adequate remedy at law to protect and preserve assets that constitute property of the estates, which are comprised of the insurance policies themselves and/or the claims that comprise the Trustee Actions.  Further action will threaten the administration of the bankruptcy estates, and an injunction is necessary to preserve and protect property of the estates and the Trustee's efforts, to prosecute claims on behalf of the estates, and thereby gather and collect property and assets for the benefit of *all* creditors.

40.     An injunction will also serve to maximize judicial economy, avoid the possibility of inconsistent decisions and will ensure preservation of uniformity of decision.

41.     The injunction will not harm the public interest, and, in fact, is in the best interest *all creditors* of the bankruptcy estates, and the orderly administration of the claims administration process.

42.     The Trustee believes that the injunction requested herein is necessary and appropriate to carry out his duties in accordance with the provisions of the Bankruptcy Code and that any further prosecution of the Nevada Action by the Term Lender Defendants and their counsel, along with attempts by the Defendants to consummate and perform under the Term Lender Settlement, would seriously impair and potentially defeat this Court's ability to administer the bankruptcy proceedings.

43.     Maintaining the *status quo* is therefore necessary, appropriate, and protective of the interests of all parties.  The Trustee lacks an adequate remedy at law, and the harm the estates will suffer if injunctive relief is not granted greatly outweighs any perceived harm the Defendants may attempt to assert will befall them.

WHEREFORE, the Trustee respectfully requests the entry of appropriate orders and a final judgment against the Defendants in favor of the Trustee: (i) imposing a preliminary and a permanent injunction against the Defendants, their members, managers, partners, joint venturers,

officers, directors, agents, attorneys, employees, shareholders, and affiliates, past or present (the "Enjoined Parties"), from, among other things, (a) prohibiting the Enjoined Parties, and those acting in concert or participation with them (including but not limited to their attorneys), or on their behalf, from pursuing the Term Lender Action and the Term Lender Settlement; and (ii) for such other relief the Court may deem appropriate.

14

Submitted this 2nd day of January, 2015.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Special Counsel for the Trustee*
100 S.E. Second Street, 44th Floor
Miami, Florida  33131
Telephone: (305) 349-2300
Facsimile:  (305) 349-2310
Email: jgenovese@gjb-law.com
Email: pbattista@gjb-law.com
Email: dcimo@gjb-law.com
Email:  pbellas@gjb-law.com

By:   /s/ John H. Genovese
      John H. Genovese, Esq.
      Fla. Bar No. 280852
      Paul J. Battista, Esq.
      Fla. Bar No. 884162
      David C. Cimo, Esq.
      Fla. Bar No. 775400
      Peter W. Bellas, Esq.
      Fla. Bar No. 611387

15